**STATE of Missouri, Respondent,**

v.

**Robert HIMMELMANN, Appellant.**

**No. 51277.**

Supreme Court of Missouri,
Division No. 1.

Feb. 14, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, Ben J. Martin, Sp. Asst. Atty. Gen., Springfield, for respondent.

Stewart & Bruntrager, Raymond A. Bruntrager, St. Louis, for appellant.

HIGGINS, Commissioner.

Robert Himmelmann was convicted of assault with intent to do great bodily harm, a felony, and the jury assessed his punishment at 2-years' imprisonment. Sections 559.190 and 556.020, V.A.M.S. Sentence and judgment followed and he has appealed.

On February 5, 1964, at about 11 P.M., Probationary Patrolman R. J. Hollowell, Jr., was on duty with the St. Louis Metropolitan Police Department. He was in uniform and operating a police scout car in which he gave chase to a Volkswagen automobile driven by defendant. Defendant stopped his automobile on St. Louis Avenue and Patrolman Hollowell stopped his scout car ten to twelve feet to the rear of defendant. Patrolman Hollowell went forward to defendant's car and informed defendant that he was going to issue a summons to him for speeding. He obtained defendant's operator's license and returned to the scout car. Defendant got out and walked back to the scout car and asked that he not be given a ticket. During the course of the discussion, defendant "swung through the open window" and struck Patrolman Hollowell on the left temple with his fist. Patrolman Hollowell was then seated under the wheel in the front seat of the scout car writing the summons and defendant was standing at the door of the car. Further struggle followed during which additional blows were struck by defendant and both men went across the front seat of the scout car and out the door on the passenger's side to the ground where the assault continued. Hollowell stated that he tried to free his handcuffs and upon hearing a snap sound, saw that defendant was trying to pull the officer's revolver from its holster. Patrolman Hollowell tried to get his gun from the defendant and, while defendant's hand was on the revolver, pulled the trigger. Upon the discharge defendant released the revolver and Patrolman Hollowell shot three more times. These shots struck defendant causing him to be hospitalized. The blows struck by defendant caused Patrolman Hollowell to suffer bruises and lacerations of his head and face, undisplaced fractures of his nose, and impairment of consciousness as indicative of cerebral concussion. His left eye was blackened and swollen,

one tooth was chipped and the filling dislodged in another, and the lip lacerations required repair with silk sutures. These injuries required 15-days' hospitalization. Defendant was 39 years old, 5 feet 6 inches in height, and weighed 150 pounds; Patrolman Hollowell was 26, five feet ten and one-half inches, 150 pounds.

Appellant contends that the circumstances of this case do not support a case of felonious assault as submitted by Instruction 2; that a court-martial conviction for murder is not a criminal offense for purposes of an attack on defendant's credibility, and that the admission into evidence of Exhibit 4, a photograph which shows a bottle of liquor in defendant's car, was prejudicial error.

We have determined that the conviction must be reversed and the cause remanded because of the admission into evidence of Exhibit 4; however, since the other questions will probably recur in the event of retrial, we discuss them here.

In support of his first contention, appellant argues that the court erred in submitting an issue of felonious assault because the evidence shows him to be guilty of no more than a common assault. He also argues that there was no "ferocious brutality" indicated. In support of his arguments appellant points to the absence of a weapon and the lack of disparity in the size of assailant and victim.

■ In State v. Rose, Mo., 346 S.W.2d 54, 56[2–4], we held that in a prosecution for felonious assault with intent to do great bodily harm under Section 559.190, supra, "The State was merely required to show an unlawful assault, with intent * * * to do great bodily harm," and that such a charge was properly submitted to the jury by an instruction which hypothesized an assault with fists as did Instruction 2 here. (The jury was also instructed on common assault.) The circumstances of that case were similar in that the defendant failed in an attempted knife slash after which he shoved his victim against a car and struck him repeatedly with his fists, causing the victim to suffer a broken jawbone, bleeding at the mouth and nose, swollen face, and rib injury. See also State v. Gillespie, Mo., 366 S.W.2d 677, and State v. Spradlin, 363 Mo. 940, 254 S.W.2d 660, in which aggravated assaults with fists were held to constitute felonious assaults even under Section 559.180, V.A.M.S. (felonious assaults with malice aforethought). The evidence here is undisputed that defendant intended the assault by striking the first blow; he struck it when he had the advantage of standing above his seated victim who was unaware that he was going to be beaten, and he pursued his advantage into, across, and outside the opposite side of the car. There is no evidence of provocation or justification which might render this assault lawful. The evidence shows that the victim received serious bodily injuries requiring hospitalization. Where such matters exist, a jury may properly find an assault with intent to do great bodily harm.

Appellant cites State v. Rongey, Mo., 231 S.W. 609, which is not in point because it holds only that where the information charges an assault with a dangerous and deadly weapon it is error to authorize the jury to convict where the injuries were shown to have been inflicted solely with fists and without any instrument.

Appellant's second contention arises from testimony elicited over objection from defendant upon his cross-examination:

"Q (Mr. Fredericks) Mr. Himmelmann, on May 18, 1945, were you convicted of the offense of murder and sentenced to serve life imprisonment at the United States Penitentiary at Lewisburg, Pennsylvania?

"MR. BRUNTRAGER: I object to the form of the question, Your Honor, and of course the substance, for grounds previously stated.

"THE COURT: Be overruled.

"Q (Mr. Fredericks) Were you, sir?

A No, sir, not in '45.

"Q What year was that? A '44.

"Q 1944? A Yes, sir."

This testimony followed a lengthy discussion between the court and counsel in which the conviction and sentence were identified as having occurred in a military court-martial, and appellant contends that it was error to permit this attack on his credibility "because a conviction by court martial is not a criminal offense in contemplation of V.A.M.S. 491.050." This point has not been ruled before in Missouri.

■ Section 491.050 supra provides: "Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer." The statute is to be strictly construed in determining whether a defendant has committed a criminal offense within the meaning of the statute, State v. Rumfelt, Mo., 258 S.W.2d 619, 620[3], and must be construed with Section 556.010, V. A.M.S., Myles v. St. Louis Public Service Co., Mo.App., 52 S.W.2d 595, 597[1, 2]. Section 556.010 supra provides: "The terms * * * 'criminal offense,' when used in this or any other statute, shall be construed to mean any offense, as well misdemeanor as felony, for which any punishment by imprisonment or fine, or both, may by law be inflicted," and by Section 556.020, V. A.M.S., "The term 'felony,' when used in this or any other statute, shall be construed to mean any offense for which the offender, on conviction, is liable by law to be punished with death or imprisonment in a correctional institution of the state department of corrections and no other." Likewise, under federal law, "Persons convicted of offenses against the United States or by courts-martial and sentenced to terms

of imprisonment of more than one year may be confined in any United States penitentiary," Title 18 U.S.C.A. § 4083, and "Any offense punishable by death or imprisonment for a term exceeding one year is a felony," Title 18 U.S.C.A. § 1.

In Erving v. State, 174 Neb. 90, 116 N.W. 2d 7, certiorari denied 375 U.S. 876, 84 S.Ct. 151, 11 L.Ed.2d 121, defendant was on trial for murder and he contended that receipt of his conviction by court-martial for desertion for purpose of his impeachment was error. The Nebraska statute, Section 29–102, R.R.S.1943 (similar to our Section 556.020 supra), says that " 'felony' signifies such an offense as may be punished with death or imprisonment in the penitentiary," and that provision was construed along with Title 18 U.S.C.A. § 1, supra, in concluding that "a conviction by a court-martial is a conviction for a felony within the Nebraska definition if the offense for which the conviction is had may be punished by imprisonment in a penitentiary." 116 N.W.2d l.c. 15[14].

Article 92, Articles of War 1928, in effect at the time of appellant's court-martial conviction, provided:

"Any person subject to military law who commits murder * * * shall suffer death or imprisonment for life, as a court-martial may direct; * * *." (For later and current provision, see Title 10 U.S.C.A., § 918, Chap. 47, Uniform Code of Military Justice.)

■ By this provision appellant's court-martial conviction for murder brought on the imposition of a life sentence which made the offense a felony under Title 18 U.S.C.A. § 1, supra; that section defines "felony" in virtually the same terms as our Section 556.020, supra, and a felony is a criminal offense within the meaning of Sections 556.010 and 491.050, supra, all of which leads to our conclusion that evidence of appellant's court-martial conviction for murder was properly received for purposes

of impeaching defendant under Section 491.050, supra.

In addition to the Nebraska decision, our conclusion is supported by Jordan v. State, 141 Ark. 504, 217 S.W. 788, and Nelson v. State, 35 Ala.App. 179, 44 So.2d 802, holding convictions by court-martial for desertion may be used to impeach.

Appellant cites People v. Flynn, 275 App. Div. 350, 89 N.Y.S.2d 28, where a conviction was reversed because the defendant was cross-examined about a court-martial for assault. That court said only that "it was proper to ask him concerning any specific acts in his career that would tend to discredit him or impeach his moral character. But such military offenses as A.W.O.L. were not per se proof of such and the military court martial convictions admitted by Sullivan (Flynn's codefendant) for fighting or 'assaults' were not within contemplation of the law 'crimes.'" Our conclusion is not in conflict with that case because we have demonstrated that the crime of murder for which defendant was convicted by court-martial is a "crime" or criminal offense within the meaning of Missouri law. Likewise, appellant's citation of Henderson v. United States, 6 Cir., 202 F.2d 400, is not in conflict with our ruling because it holds only that cross-examination in such circumstances should be limited to conviction for felonies or crimes involving moral turpitude, situations which are well within our demonstration; and Grigsby v. Commonwealth, 299 Ky. 721, 187 S.W.2d 259, 159 A.L.R. 196, is not in point because it involved a cross-examination respecting a court-martial *charge* as opposed to a *conviction*, which evidence is clearly inadmissible in Missouri. State v. Rumfelt, supra.

Exhibit 4 is a photograph of the interior of appellant's Volkswagen automobile taken from the right side with the door open, and it features a less-than-full bottle of DeKuyper brandy lying on the passenger's seat. It was admitted and passed to the jury over objection, for which error this cause must be reversed.

■  This case is one of an assault which took place at, in, and alongside the victim's car which was parked several feet to the rear of appellant's Volkswagen. No part of the offense arose or occurred at or in the Volkswagen, and there is no evidence of, or reference to, liquor, drinking, or intoxication as a circumstance of the assault. Exhibit 1 showed the relation of the victim's scout car to the rear of the Volkswagen; Exhibit 2 showed the scout car and its interior from the left side; and Exhibit 3 showed the same from the right side. Under these circumstances Exhibit 4 was not relevant on the issue of assault and its receipt thus violated the rules of relevancy which apply to photographs as well as to other forms of evidence. State v. Floyd, Mo., 360 S.W.2d 630, 633. Being irrelevant, it did not tend to prove or disprove any issue in the case and, at the trial, the State did not justify the exhibit except to say that " * * * the appearance of the bottle speaks for itself and I think it goes to the weight of the evidence * * *." This is not a claim that the bottle of liquor had any connection with the offense for which appellant was being tried, and the receipt of it in evidence, under the circumstances, was prejudicially erroneous. State v. Smith, 357 Mo. 467, 209 S.W.2d 138, 141–2[7]; State v. Floyd, supra, 360 S.W.2d 1. c. 633 [3]; Gignoux v. St. Louis Public Service Co., Mo.App., 180 S.W.2d 784, 786[1].

Accordingly, for the error indicated, the judgment is reversed and the cause remanded for a new trial.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court. All concur.